[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15590
_____

D. C. Docket No. 07-00243-CV-3-LAC-EMT

WYON DALE CHILDERS,

Petitioner-Appellant,

versus

WILLIE L. FLOYD,
Warden- Glades Correctional Institution,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 14, 2013)

**On Remand from the Supreme Court of the United States**

Before CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON, PRYOR, MARTIN, DUBINA, and BLACK, Circuit Judges.[*]

PER CURIAM:

In Childers v. Floyd, 568 U.S. ___, 133 S. Ct. 1452, 185 L. Ed. 2d 358 (2013), the United States Supreme Court granted a writ of certiorari, vacated our judgment in Childers v. Floyd, 642 F.3d 953 (11th Cir. 2011) (en banc) (Childers I), and remanded the case for further consideration in light of Johnson v. Williams, 568 U.S. ___, 133 S. Ct. 1088, 185 L. Ed. 2d 105 (2013). In a previous case, Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), the Supreme Court held that when a state court decision "summarily rejects without discussion all the claims raised by the defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson, 568 U.S. at ___, 133 S. Ct. at 1089. In Johnson, the Court extended the rationale of Harrington and held that this presumption applies (subject to rebuttal) to cases in which the state court discusses some of the defendant's

---

[*] Judge Rosemary Barkett participated in the initial en banc decision of this Court, Childers v. Floyd, 642 F.3d 953 (11th Cir. 2011) (en banc), but because she resigned from the Court effective September 30, 2013, she did not participate in this decision. Judge Adalberto Jordan, who was not a member of the Court when the initial en banc decision was issued, elected not to participate in this decision. Judge J.L. Edmondson, who participated in the initial en banc decision of this Court but has since taken senior status, also elected not to participate in this decision.

claims but "rejects a federal claim without expressly addressing that claim." Id. at 1096.

In this case, the defendant, Wyon Childers, a former County Commissioner for Escambia County, Florida, was on trial for receiving a bribe from a codefendant, Joe Elliot, in exchange for voting to have the Commission approve the County's purchase of a piece of land Elliot owned.[1] Childers I, 642 F.3d at 958. A third codefendant and fellow Commissioner, Willie Junior, pleaded guilty under a plea agreement and testified for the State at Elliot's trial. Id. The jury acquitted Elliot, and thereafter Junior informed the State of incriminating information he had not disclosed prior to Elliot's trial. Id. at 958–59. Due to the nondisclosure, the State moved the trial court to revoke Junior's plea agreement. Id. at 959. The court denied the motion. Id. at 959–60.

Prior to his trial, Childers moved the trial court to permit him to bring out on Junior's cross-examination both Elliot's acquittal and the State's attempt to revoke Junior's plea agreement arguing that these events were relevant to Junior's credibility and bias as a witness. Id. at 960. The court denied his motion. Id. at 962. Addressing the admissibility of the Elliot acquittal, the court found that the unfair prejudice that the State would suffer if the testimony were allowed

---

[1] Childers was indicted for one count of money laundering, one count of bribery, and one count of unlawful compensation or reward for official behavior. Childers I, 642 F.3d at 958.

outweighed any probative value it might have.[2]  Id.  Regarding the admissibility of

the State's motion to revoke Junior's plea agreement, the court held that both the

State's motion and the court's denial were irrelevant and therefore inadmissible.[3]

Id.

A jury convicted Childers of one count of bribery and one count of unlawful

compensation for official behavior but found him not guilty of the money

laundering charge.  Id. at 962–63.  He appealed his convictions to the Florida

District Court of Appeal.  Id. at 963.  Childers's brief to the District Court of

Appeal argued that the trial court abused its discretion and denied him his Sixth

Amendment right of confrontation by barring him from cross-examining Junior as

proposed in his motion.[4]  Id.

---

[2]  Under Fla. Evid. R. 90.403 "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."  Fla. Stat. § 90.403.

[3] Under Fla. Evid. R. 90.401, "[r]elevant evidence is evidence tending to prove or disprove a material fact."  Fla. Stat. § 90.401.

[4] The Sixth Amendment's Confrontation Clause states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI.  The Clause is applicable to the States through the Fourteenth Amendment's Due Process Clause.  Pointer v. Texas, 380 U.S. 400, 403, 85 S. Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

The District Court of Appeal, sitting en banc,[5] ruled per curiam that the trial court's ruling did not constitute an abuse of discretion and affirmed Childers's convictions under Florida Evidence Rule 90.403.  Childers v. State, 936 So. 2d 585, 587 (Fla. 1st Dist. Ct. App. 2006) (en banc) (per curiam) (Childers II).  The court affirmed the convictions without expressly addressing Childers's claim that the trial court's ruling infringed his Sixth Amendment right of confrontation.

In granting certiorari and remanding this case for reconsideration in light of Johnson, the Supreme Court effectively asks us to determine whether Childers has rebutted the presumption that the District Court of Appeal adjudicated his Sixth Amendment right of confrontation claim on the merits.  To determine whether the presumption has been rebutted, we look to the state court's decision and the record in the case[6] to determine whether "the evidence leads very clearly to the conclusion that [the] federal claim was inadvertently overlooked in state court."  Johnson, 568 U.S. at ___, 133 S. Ct. at 1097.

The District Court of Appeal began its analysis of Childers's claim that the trial court had abused its discretion in prohibiting Childers from eliciting during his

---

[5] Although the appeal was initially assigned to a three-judge panel, a majority of the judges of the District Court of Appeal voted to hear the case en banc under Fla. R. App. P. 9.331(a), before the panel's decision was ever released.  Childers I, 642 F.3d at 964 n.12.

[6]  In the present context, the record consists of (1) the portions of the trial court record relating to Childers's motion to permit him to cross-examine Junior with the evidence of Elliott's acquittal and the State's attempt to withdraw Junior's plea agreement and (2) the briefs the parties submitted to the District Court of Appeal in Childers's appeal.

cross-examination of Junior evidence relating to the Elliot acquittal and the State's attempt to withdraw Junior's plea agreement by holding that such evidence was relevant under Florida Rule of Evidence 90.401.  Childers II, 936 So. 2d at 592. The court then observed that the Florida Rules of Evidence, specifically Rule 90.608, [7] gave Childers the right to "attack Junior's credibility."  Id.  The court focused, in particular, on subpart (2) of the rule, which allowed Childers to show on cross-examination that Junior was "biased."  Id.  ("Under the rules of evidence, Appellant could attack Junior's credibility by 'showing that a witness is biased.'"). In essence, the court was observing that Florida's rules of evidence gave Childers the same right of confrontation he enjoyed under the Confrontation Clause— the right to expose a witness's "motivation in testifying."  See Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986) (internal quotation marks omitted).  While recognizing the importance of Childers's right to attack Junior's credibility, the District Court of Appeal

---

[7]  Florida Evidence Rule 90.608 provides that: "[a]ny party, including the party calling the witness, may attack the credibility of a witness by:
(1) Introducing statements of the witness which are inconsistent with the witness's present testimony.
(2) Showing that the witness is biased.
(3) Attacking the character of the witness in accordance with the provisions of § 90.609 or § 90.610.
(4) Showing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which the witness testified.
(5) Proof by other witnesses that material facts are not as testified to by the witness being impeached."
Fla. Stat. § 90.608.

6

nonetheless observed that this right of confrontation is subject to limitation under Rule 90.403.[8]  Childers II, 936 So. 2d at 593.  In Childers's case, the "trial judge [had to] balance the import of the evidence" Childers sought on cross-examination "against the danger of unfair prejudice. Only when the unfair prejudice substantially outweighs the probative value of the evidence should it be excluded." Id.

It is clear to us that Childers's Confrontation Clause claim was not "inadvertently overlooked" by the District Court of Appeal.  The claim was squarely before the court.[9]  Although the court expressly analyzed Childers's claim under only the Florida rules of evidence, the underpinnings of these rules fit hand in glove with the rights guaranteed under the Confrontation Clause.

---

[8] In Van Arsdall, the Supreme Court likewise held that the right of confrontation is subject to limitation by the trial court "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . [T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  475 U.S. at 678, 106 S.Ct. at 1435 (emphasis in original) (internal quotation marks omitted).

[9] As we noted in our en banc decision, although the opinion of the Florida District Court did not expressly reference Childers's Sixth Amendment claim, the federal claim "did not slip the court's collective mind."  Childers I, 642 F.3d at 971 n.19.  Indeed, "several of the concurring and dissenting opinions explicitly mentioned the Confrontation Clause and relevant Supreme Court precedent."  Id.; e.g., Childers v. State, 936 So. 2d at 599 (Thomas J. specially concurring); id. at 604–07 (Kahn, C.J., concurring in part and dissenting in part); id. at 617 (Browning J., concurring in part and dissenting in part); id. at 617–19 (Polston, J., concurring in part and dissenting in part); id. at 615 (Benton J., concurring in part and dissenting in part).

In sum, we hold that the Florida District Court of Appeal adjudicated Childers's Confrontation Clause claim on the merits.  We therefore reinstate our decision in <u>Childers I</u>, and the District Court's decision denying Childers's a writ of habeas corpus is

AFFIRMED.

WILSON, Circuit Judge, dissenting:

This case was remanded back to us from the Supreme Court so that we may assess, in light of *Johnson v. Williams*, 568 U.S. ___, 133 S. Ct. 1088 (2013), whether Childers rebutted the presumption that the Florida District Court of Appeal (DCA) reached the merits of his Sixth Amendment confrontation claim. Under *Johnson*, "if, . . . in at least some circumstances the state standard is *less* protective [than the federal standard,] . . . [i]n such circumstances, the presumption that the federal claim was adjudicated on the merits may be rebutted . . . ." *Id.* at 1096. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011). Here, the presumption is rebutted because Florida Rule of Evidence 403, the state standard discussed by the DCA, is "*less* protective" than the Sixth Amendment's Confrontation Clause. *See* Fla. Stat. § 90.403. There are also reasons to think that "some other explanation for the [DCA's] decision [was] more likely" than adjudication of Childers's Sixth Amendment claim on the merits. *Harrington*, 562 U.S. at ___, 131 S. Ct. at 785.

As the majority concedes, the DCA affirmed Childers's convictions "without expressly addressing Childers's claim that the trial court's ruling infringed his Sixth Amendment right of confrontation." Majority Op. at 5. As I previously stated, the DCA did not address Childers's Sixth Amendment claim

when it exclusively discussed Florida's substantive evidentiary rule. *See Childers v. Floyd*, 642 F.3d 953, 983–989 (11th Cir. 2011) (en banc) (Wilson, J., concurring), *cert. granted, judgment vacated*, ___ U.S. ___, 133 S. Ct. 1452 (2013). His Sixth Amendment rights could be violated even if his cross-examination of Willie Junior was properly limited under Rule 403. Our per curiam opinion seems to suggest that Rule 403 and the Sixth Amendment right of confrontation go hand in hand with one another—if there is no Rule 403 violation, then it follows that there is no Sixth Amendment constitutional violation either. I cannot subscribe to that view.

Rule 403 calls on the trial judge to determine whether the probative value of evidence sought to be introduced is substantially outweighed by the danger of unfair prejudice. That is an entirely different—and narrower—question than determining whether an accused has been denied the right to confront a witness testifying against him through the demonstration of that witness's bias, prejudice, or ulterior motive. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974). Confrontation rights are violated when the trial court "cut[s] off all questioning about an event that . . . had taken place and that a jury might reasonably have found" biased the witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986).

10

The DCA does not even mention the words "Sixth Amendment" or "confrontation" in its opinion.  Its opinion is confined exclusively to determining whether there was a violation of a Florida substantive evidentiary rule.  The tests are not the same, and our per curiam opinion is unable to cite any authority to support the proposition that such a constitutional analysis can be subsumed, by implication, within the resolution of a state substantive evidentiary rule.  Beyond failing to mention the more protective federal claim while extensively analyzing a less protective state claim, "there is [one additional] reason to think some other explanation for the state court's decision is more likely" than an adjudication of Childers's Sixth Amendment claim on the merits.  *Harrington*, 562 U.S. at ___, 131 S. Ct. at 785.  Determinations under Rule 403 are reviewed for abuse of discretion, *see McWatters v. State*, 36 So. 3d 613, 636 (Fla. 2010) (per curiam) ("A court's ruling on the relevancy of evidence is reviewed for an abuse of discretion."), while determinations under the Confrontation Clause are reviewed de novo, *see id.* at 637 ("In considering a trial court's ruling on admissibility of evidence over an objection based on the Confrontation Clause, our standard of review is *de novo*."  (internal quotation marks omitted)).  The DCA reviewed the trial court's decision for abuse of discretion only, *see Childers v. State*, 936 So. 2d 585, 592 (Fla. Dist. Ct. App. 2006) (en banc) (per curiam), showing that it only analyzed the *less* protective state court claim.

11

The majority believes it to be clear that Childers's Confrontation Clause claim was not "inadvertently overlooked" by the DCA. I disagree. In reviewing a criminal conviction, if an appellate court is going to limit its analysis to one of several distinct claims as the DCA did here, the court would choose the most protective claim with the least deferential standard of review—unless the more protective claim was overlooked. Given these circumstances, *Johnson*'s presumption that the claim was adjudicated on the merits has been rebutted.

I dissent because I believe that we are obligated to decide Childers's Sixth Amendment confrontation claim on the merits. As I previously indicated, however, I am not inclined to conclude ultimately that Childers's Sixth Amendment rights were violated by the limitations placed on his counsel during his cross-examination of Willie Junior.

MARTIN, Circuit Judge, dissenting:

I dissent from the Majority's opinion on remand, which reinstates this Court's en banc opinion in Childers v. Floyd, 642 F.3d 953 (11th Cir. 2011) (en banc) (Childers I), cert. granted, judgment vacated, ___U.S.___, 133 S. Ct. 1452 (2013), after the Supreme Court had vacated it and remanded it for our consideration in light of Johnson v. Williams, 568 U.S. ___, 133 S. Ct. 1088 (2013). Setting aside that members of our court may have different views about what is the right result for Mr. Childers,[1] the en banc Majority's interpretation in Childers I of the term "adjudicated on the merits" must be reevaluted and rejected in light of Williams.

In Childers I, the en banc Majority said that "an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar." 642 F.3d at 968 (emphasis added). Childers I then held: "unless the state court clearly states that its decision was based solely on a state procedural rule, we will presume that the state court has rendered an adjudication on the

---

[1] For the reasons set out by Judge Barkett in her dissent in Childers I, which I joined, I maintain my view that the Florida Courts did not adjudicate Mr. Childers's Confrontation Clause claim "on the merits" within the meaning of 28 U.S.C. § 2254(d) and Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 784–85 (2011). See Childers I, 642 F.3d at 988–95 (Barkett, J., dissenting, joined by Martin, J.). I also agree with Judge Wilson, who explains in his dissent to the Majority's restated opinion here, that Mr. Childers has rebutted the presumption that his claim was adjudicated on the merits under Williams. See Wilson dissent at 4. Under the resulting de novo review, however, I stand by my earlier conclusion that Mr. Childers is entitled to habeas relief based upon the circumstances of his case. Childers I, 642 F.3d at 988–95 (Barkett, J., dissenting, joined by Martin, J.).

13

merits when the petitioner's claim 'is the same claim rejected' by the state court."

Id. at 969 (quoting Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 364 (2002)).

This exceedingly broad interpretation of the term "adjudicated on the merits" is

directly at odds with the Supreme Court's decision in Williams because the

Majority's rule elevates all state court decisions, except for rulings "clearly" and

"solely" based on state procedural grounds, to be "adjudications on the merits."

In Williams, the Supreme Court was called upon to "ascertain the meaning

of the adjudication-on-the merits requirement" of 28 U.S.C. § 2254(d). Williams,

133 S. Ct. at 1091. The meaning of this term is important because the

Antiterrorism and Effective Death Penalty Act "sharply limits the circumstances in

which a federal court may issue a writ of habeas corpus to a state prisoner whose

claim was 'adjudicated on the merits in State court proceedings.'" Id. at 1094

(quoting 28 U.S.C. § 2254(d)). As the Supreme Court explained,

> [t]his issue arises when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question. If this defendant then raises the same claim in a federal habeas proceeding, should the federal court regard the claim as having been adjudicated on the merits by the state court and apply deference under § 2254(d)? Or may the federal court assume that the state court simply overlooked the federal claim and proceed to adjudicate the claim de novo, the course taken by the Court of Appeals in the case at hand?

14

Id. at 1091 (emphasis added). The answer to this question, the Supreme Court told us in Williams, "follows logically from [its] decision in Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770 (2011)." Williams, 133 S. Ct. at 1091.

By way of background, the Supreme Court held in Richter that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Id. (quoting Richter, 131 S. Ct. at 785) . Rather, the Supreme Court explained, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. (emphasis added) (quoting Richter, 131 S. Ct. at 784–85). Although Richter reviewed a state court summary adjudication that "did not address any of the defendant's claims," the Supreme Court in Williams found "no reason why the Richter presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims." Id. at 1094. Thus, Williams reaffirmed the holding of Richter and extended it in the context of non-summary state court opinions.

But it is important to note that Williams also reaffirmed that the Richter presumption was rebuttable: "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some

15

limited circumstances be rebutted." Id. at 1096.   In sustaining the principle that the presumption a claim has been adjudicated on the merits may be rebutted, the Supreme Court considered and rejected the State of California's invitation to hold otherwise.  California argued in Richter that an irrebuttable presumption should apply where "a defendant claimed in state court that something that occurred at trial violated both a provision of the Federal Constitution and a related provision of state law" and the state court, "in denying relief, made no reference to federal law." Id.  Williams rejected California's argument for an irrebutable presumption in this scenario because it "goes too far." Id.  The Supreme Court explained, "while the Richter presumption is a strong one that may be rebutted only in unusual circumstances, it is not irrebuttable.  Per se rules should not be applied . . . in situations where the generalization is incorrect as an empirical matter, and an irrebuttable presumption that state courts never overlook federal claims would occasionally miss the mark."  Id. at 1096–97 (quotation marks, internal citation and footnote omitted).

In light of the Supreme Court's holding and reasoning in Williams, the Majority opinion's per se rule from Childers I cannot stand.   That is because the Majority's per se rule in Childers I operates like an "irrebutable presumption that state courts never overlook federal claims," id. at 1097, at least in cases where the state court did not "clearly" and "solely" rely on a procedural rule.   As Justice

16

Alito explained for the Court in <u>Williams</u>, "[i]f a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter." <u>Id.</u>  Said another way, claims that have been overlooked cannot have been "adjudicated on the merits in State court" within the meaning of § 2254(d).  <u>See id.</u>  Thus, even in the face of the Supreme Court's emphatic rejection of an irrebuttable presumption in <u>Williams</u>, the en banc Majority here all but ignores <u>Williams</u> by reinstating its opinion in <u>Childers I</u>.  Today's reinstated <u>Childers I</u> opinion leaves undisturbed an irrebutable presumption (that there was an adjudication-on-the merits in all § 2254 cases involving the same claim in state and federal court) "unless the state court clearly states that its decision was based solely on a state procedural rule."  <u>Childers I</u>, 642 F.3d at 969.

Although the en banc Majority's rule may seem simpler to apply than <u>Williams</u>'s rebuttable presumption, the Supreme Court was not "persuaded that applying a rebuttable presumption in this context will be unduly burdensome for federal courts."  <u>Williams</u>, 133 S. Ct. at 1097.  But more to the point, the now reinstated <u>Childers I</u> opinion is contrary to the rule the Supreme Court announced in <u>Williams</u>, and directed us to apply upon remand of Mr. Childers's case.  So while the majority's inquiry into whether a claim has been procedurally defaulted is certainly necessary and proper, its <u>per se</u> rule ignores the more probing and

17

complete inquiry required by <u>Williams</u> in cases where the state court may have inadvertently overlooked or misunderstood the federal claim.

For these reasons, I dissent.